Zimmerman, J.
This cause' originated in the Probate Court of Shelby County and is here on its merits pursuant to the allowance of a motion to require the Court of Appeals for Shelby county to certify its record. The only question presented is whether the Court of Appeals committed reversible error in affirming a judgment of the Court of Common Pleas (to which court an appeal had been taken from the Probate Court) denying permission to the Pennsylvania Greyhound Lines, Inc., the appellant herein and hereinafter referred to as such, to present its claim for damages to the administrator of the estate of Paul Marrs, deceased, after the elapse of four months from the appointment of such administrator. The judgments of the three lower courts are in accord.
Two statutes are involved — Sections 10509-112 and 10509-134, General Code. The former provides that those who have claims against a decedent’s estate *97 shall present the same to the executor or administrator in writing within four months of the appointment of snch executor or administrator. The latter recites in part that a claimant who has failed to present his claim to the executor or administrator within the time prescribed in Section 10509-112, General Code, may file a petition in the Probate Court for authority to do so after the expiration of such time; and that, following due notice to those concerned, a hearing on such petition shall be had and if the court finds “that the claimant did not have actual notice of the decedent’s death or of the appointment of the executor or administrator in sufficient time to present his claim within the time prescribed by law * * * then the court may authorize such claimant to present his claim to the executor or administrator after the expiration of such period.” (Italics ours.)
Paul Marrs, the decedent, died on May 3, 1950, and it was stipulated by counsel that on May 9, 1950, an administrator of his estate was appointed and the notices thereof required by law were given.
On January 24, 1951, appellant filed its petition in the Probate Court asking leave to present its claim for $22,186.93 to the administrator of Paul Marrs’ estate, on account of damage to one of its motorbuses negligently occasioned in a collision hereinafter described.
It appears from the bill of exceptions that on the early morning of May 3, 1950, on U. S. route 42, about a mile north of the city of Ashland, Ohio, a collision occurred between a motorbus owned and operated by appellant and a tractor-trailer outfit operated by Paul Marrs. The drivers of both vehicles died almost immediately from the injuries they received.
The general claim agent of appellant, located at Cleveland, who had been snch for a long time and who *98 personally handled all claims respecting personal injuries, death and property damage, with or without suit, for and against appellant, was promptly notified of the collision. He proceeded at once to the scene of its occurence and made an investigation. He was then informed that the drivers of the vehicles had both been killed, and that Paul Marrs was the operator of the tractor-trailer. The claim agent “learned of his residence at that time.”
Further investigation was made with the employment of several assistants, including attorneys at law from Mansfield and Columbus.
Within a month or six weeks following the collision, appellant’s general claim agent discovered that the licenses for the tractor-trailer had been issued to Paul Marrs and that the P. U. C. O. permits for the operation of the tractor-trailer had been issued to the Glenn Cartage Company and the Steel Trucking Company. Correspondence was had with these companies and with interested insurers relative to claims which appellant was asserting.
In his deposition, appellant’s general claim agent stated that, although he had not been admitted to the bar, he had studied law for five years, and that he never caused an investigation to be made or sought or received any information as to the appointment of an executor or administrator of the estate of the decedent Paul Marrs.
It is established by the record that appellant, through its general claim agent, actually knew of the death of Paul Marrs and his place of residence a comparatively short time after the collision. It is likewise apparent that no move was made to file a claim with the administrator within four months of the appointment as required by Section 10509-112, G-eneral Code.
Was appellant then entitled to relief under Section *99 10509-134, General Code? As we read the portion of that section pertaining to the instant controversy, it clearly says that, for the court to authorize a claimant to present his claim after the elapse of four months from the appointment of an administrator, he must produce evidence from which the court can find that he “did not have actual notice of the decedent’s death or of the appointment of the executor or administrator in sufficient time to present his claim within the period prescribed by law.” (Italics ours.) The language employed is plainly in the disjunctive. In its usual sense and meaning the word, “or,” connotes the alternative — one or the other of two designated things.
However, an examination of the authorities shows that under certain conditions the word, “or,” in a legislative enactment can be construed to read ‘ ‘ and, ’ ’ and that the word, “and,” can likewise be construed to read “or.” The word, “and,” or, “or,” will not be given its literal meaning where such meaning would do violence to the evident intent and purpose of the lawmakers and the other meaning would give effect to such intent. Contrariwise, the words should not be treated as interchangeable when their accurate and literal meaning does not render the sense dubious, and the fact that the terms of the legislative enactment when given their literal meaning may prove onerous in some instances is not sufficient to warrant a court in arbitrarily changing plain and unambiguous language employed by the legislative body in the enactment.
To substitute the word, “and,” for “or” in Section 10509-134, General Code, would be to attribute to the General Assembly the doing of a useless thing. For example, if that body had intended that actual notice of both the death and the appointment was necessary the inclusion of the requirement of notice *100 of death would be surplusage. Where one has actual notice of the appointment of an executor or administrator, he would perforce be advised that death had preceded such appointment. Clearly, the General Assembly used “or” in its generally accepted sense. By placing the alternative in the statute, actual notice of either the death or the appointment is sufficient to place a claimant under the duty of filing his claim within the four months, providing the notice comes soon enough to enable him to do so.
Bearing in mind that the prompt and expeditious settlement of the estates of decedents is an approved and desirable object, we are of the opinion that the General Assembly used the word, “or,” in Section 10509-134, General Code, advisedly and deliberately, so that, when one has a claim against a decedent and has actual notice of his death, he is at once put upon inquiry as to the appointment of a fiduciary and if he learns of such appointment, or in the exercise of reasonable diligence could learn of the same, he must file his claim within the specified four-month period, if he has a fair opportunity, or be precluded from doing so.
In the instant case, the undisputed facts are that appellant, through its general claim agent, knew of Paul Marrs’ death and the place of his residence relatively soon after he died. The administrator was appointed within six days of his death and it would have been a simple and easy matter for appellant to have ascertained that fact promptly and to have filed its claim within the period of four months.
Under the evidence in the case at bar this court can not say that the Probate Court and the Court of Common Pleas were wrong in denying appellant’s petition to file its claim with the administrator, that they committed an abuse of discretion in pursuing such course, and that the Court of Appeals was in error in *101 entering a judgment of affirmance. The judgment of the Court of Appeals is, therefore, affirmed.

Judgment affirmed.

Weygandt, C. J., Stewart, Taft, Matthias and Hart, JJ., concur.